## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**JACQUELINE T. ROBINSON-REEDER,**

    **Plaintiff,**

    **v.**                               **Civil Action No.  08-1577 (JDB)**

**AMERICAN COUNCIL ON EDUC.,**

    **Defendant.**

---

### MEMORANDUM OPINION

Plaintiff Jacqueline T. Robinson-Reeder, proceeding pro se, brings this action against her former employer the American Council on Education ("ACE"), asserting a retaliation claim in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and a claim that ACE violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 et seq.  Before the Court are numerous motions for summary judgment filed by both parties on both claims.  Upon careful consideration of the parties' memoranda, the applicable law, and the entire record herein, the Court will grant summary judgment in favor of ACE on both counts.

### BACKGROUND

The Court, and the parties, are by now familiar with the allegations underlying this case. They have spawned three separate actions -- before both this Court and the Superior Court of the District of Columbia -- and are the subject of voluminous briefing.

Robinson-Reeder began working on a full-time basis for ACE in September 2006.  See Pl.'s Brief in Supp. of Summ. J. [Docket Entry 73], Exhibit 9 (Dec. 15, 2008 EEOC Charge of

Discrimination).[1]  During her employment, Robinson-Reeder complained that a new office

assistant with whom she worked was "insubordinate," "refused to complete assignments and

disrespected the plaintiff" during October and the beginning of November of 2006.  Robinson-

Reeder v. Am. Council on Educ., 532 F. Supp. 2d 6, 10 (D.D.C. 2008) (quotation omitted).  As a

result of what she considered "intolerable" working conditions, Robinson-Reeder met with

ACE's Executive Director to air her complaints about the new office assistant.  Id.

Following this meeting, the Executive Director informed Robinson-Reeder that her

concerns regarding the office assistant would be addressed, but that Robinson-Reeder was being

placed on probation "because the Executive Director had received complaints about her 'rude'

behavior from four different departments."  Id.  Upset at this probation, and based on other

complaints she had with ACE, Robinson-Reeder immediately submitted a letter of resignation to

ACE.  See id.; see also Pl.'s P. & A. in Supp. of Summ. J. [Docket Entry 73], Exhibit 4

(Robinson-Reeder Letter of Resignation).  Thereafter, she filed a Charge of Discrimination with

the Equal Employment Opportunity Commission ("EEOC"), contending that she had been

discriminated against on account of her race.  See Dec. 15, 2008 EEOC Charge of

Discrimination.  In that charge, plaintiff offered that she had been "unjustly placed on probation

for 30 days based upon complaints that [she] had been rude to individuals."  Id.  She also

suggested that she resigned "due to this intolerable treatment."  Id.

After Robinson-Reeder resigned from ACE, she attempted to find employment

elsewhere.  See Robinson-Reeder, 532 F. Supp. 2d at 11.  She alleges, however, that she has been

---

[1] Given the large number of plaintiff's filings in this case, the Court will cite to the docket
number after initially introducing a filing.  The Court will follow convention when citing to
ACE's filings.

unable to secure permanent employment because she "has been denied a standard job reference

on three separate occasions" by ACE.  Compl. at p. 3.  And, according to Robinson-Reeder,

where ACE did provide references, they were "negative and defamatory."  Compl. at p. 3.  In

light of her inability to obtain permanent employment, she filed a second Charge of

Discrimination with the EEOC, alleging retaliation for filing her original EEOC charge.  See

Docket Entry 73, Exhibit 2 (March 1, 2007 EEOC Charge of Discrimination).  It is this second

charge of discrimination that gives rise to this action.   Robinson-Reeder also asserts a claim for

penalties under COBRA based on ACE's alleged failure to provide a required COBRA notice to

her after her resignation.  Compl. at p. 17.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its

motion by identifying those portions of "the pleadings, the discovery and disclosure materials on

file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material

fact.  Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the

"mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  Thus, the non-

moving party cannot rely on mere speculation or compilation of inferences to defeat a motion for

summary judgment.  See Hutchinson v. Cent. Intelligence Agency, 393 F.3d 226, 229 (D.C. Cir.

2005).  Nor can the non-moving party rely on hearsay statements or conclusory statements with

no evidentiary basis to establish a genuine issue of material fact.  See Assoc. of Flight Attendants

v. Dep't of Transp., 564 F.3d 462, 465 (D.C. Cir. 2009).  "If the evidence is merely colorable, or

is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at

249-50 (citations omitted).  Moreover, a moving party may succeed on summary judgment by

pointing to the absence of evidence proffered by the non-moving party.  See Celotex, 477 U.S. at

322; see also Anderson, 477 U.S. at 252 (summary judgment appropriate if the non-movant fails

to offer "evidence on which the jury could reasonably find for the [non-movant]").

## ANALYSIS

**I.       Robinson-Reeder's Retaliation Claim**

The Court analyzes plaintiff's retaliation claim pursuant to the familiar burden-shifting

analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this

framework, a plaintiff has the burden of establishing a prima facie case of discrimination or

retaliation by a preponderance of the evidence.  See id. at 802; see also Tex. Dep't of Cmty.

Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  If the plaintiff establishes a prima facie case,

the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its

actions.  See McDonnell Douglas, 411 U.S. at 802.  And if the employer is successful, the burden

shifts back to the plaintiff to show that the employer's stated reason was a pretext for

discrimination or retaliation.  See id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc.,

530 U.S. 133, 143 (2000).  "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 253).

The parties here stop at the plaintiff's prima facie case for retaliation.  So too will the Court.[2]  To establish a prima facie case of retaliation, a plaintiff must show: "'(1) that she engaged in statutorily protected activity, (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two.'"  Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir.1985) (quoting McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir.1984)); accord Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir.1999).  The parties do not contest the first and third elements; thus the only issue is "whether ACE has taken any adverse action against [Robinson-Reeder]."  Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") [Docket Entry 89-1], at 6.

Both parties here filed summary judgment motions as to this element.  Robinson-Reeder argues that because she filed an EEOC charge alleging that ACE discriminated against her on account of her race, ACE subsequently refused to give potential employers job references for her.  And when ACE did provide such references, she contends it gave only "negative and defamatory [job] references" to potential employers.  Compl. at p. 3.

For its part, ACE responds that it is entitled to summary judgment on Robinson-Reeder's

_____

[2] The D.C. Circuit recently stated that "judicial inquiry into the prima facie case is usually misplaced" on summary judgment because "the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008).  Here, however, ACE does not offer a non-discriminatory reason for the challenged action because it contends the alleged retaliation never occurred.

retaliation claim because she "has produced no admissible evidence that ACE has taken any adverse action against her." Def.'s Mem. at 6. There is no evidence, ACE says, "of any such retaliatory statements made to potential employers or employment agencies." Id. Further, according to ACE, "the only admissible evidence in this case is that no one at ACE gave a negative reference about Ms. Robinson-Reeder or revealed her EEOC charge to a prospective employer or employment agency." Id. at 8.

ACE is correct that Robinson-Reeder has produced no evidence that supports her retaliation claim. She alleges that she has been denied references "on three occasions," but she fails to point to any evidence in the record corroborating this statement. Robinson-Reeder's conclusory allegation that ACE denied her job references, by itself, cannot defeat summary judgment. See Dist. Intown Props. Ltd. P'ship v. Dist. of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record."); Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."). To be sure, Robinson-Reeder suggests that "defendants admit to denying a standard job reference immediately after the plaintiff complained about insubordination, unhealthy work environment and denial of technical support," Pl.'s Opp'n to Def.'s Mot. for Summ. J. [Docket Entry 91], at 3, but she does not point to any such admission in the record -- and ACE expressly denies the charge. See Answer ¶¶ 8, 14.

Further, the record contravenes Robinson-Reeder's allegation. According to Coleen

Collins, the Assistant Vice President of Human Resources at ACE, the Human Resource

Department -- which provides job references to prospective employers about former employees --

had "only once been contacted regarding a reference for Ms. Robinson-Reeder." Def.'s Reply in

Supp. of Summ. J. ("Def.'s Reply") [Docket Entry 96], Exhibit 1 (Def.'s Am. Responses to Pl.'s

Written Examination of Coleen Collins ("Def.'s Am. Responses")), at 8. And on this one

occasion, Collins "provided a reference on [Robinson-Reeder's] behalf." Id. Put simply, there is

an absence of "evidence on which the jury could reasonably find" that ACE withheld job

references for Robinson-Reeder from potential employers. Anderson, 477 U.S. at 252.

Robinson-Reeder's contention that ACE provided "negative and defamatory [job]

references" to potential employers fares no better. Her belief that ACE provided such references

is apparently predicated on the conclusion that although she went on several job interviews she

remains unemployed. Compl. at p. 4. But she admits that these allegations are nothing more

than speculation:

> ACE: Could you identify for me by name the individuals at the American Council
> on Education who have given you what you believe to be are negative references.
>
> Robinson-Reeder: I can't state who they are because I don't have any evidence of a
> specific person giving me a bad reference.

**********

> ACE: Do you have any information that Ms. Morfit[3] has provided negative
> comments about you to any potential employer.
>
> Robinson-Reeder: I don't know.
>
> ACE: Do you have any information that Ms. Morfit has provided negative

---

[3] Christine Morfit was Executive Director of Higher Education for Development at ACE
when Robinson-Reeder was employed there. See Def.'s Mem., Exhibit D (Morfit Aff.), at ¶¶ 1-2.

comments about you to anyone?

Robinson-Reeder: I don't know what type of references she has given me.  I have no idea.

Def.'s Mem., Exhibit C (Robinson-Reeder Dep., Sept. 9, 2009), at 12:14-20; 52:1-8; see also

Def.'s Mem., Exhibit E (Pl.'s Reply to First Set of Interrogatories), at ¶ 12 (Robinson-Reeder

"does not know" what negative references Collins provided).  Furthermore, both Collins and

Morfit deny giving potential employers negative or defamatory references about Robinson-

Reeder.  See Def.'s Mem., Exhibit A (Collins Aff.), at ¶ 4 ("The HR Department at ACE has not

provided negative references for Ms. Robinson-Reeder to any prospective employers or

placement agencies."); Morfit Aff at ¶ 3 ("I have not provided negative references for Ms.

Robinson-Reeder to any prospective employers or placement agencies."); see also Def.'s Mem.,

Exhibit B (Goodwin Aff.), at ¶ 2 ("I did not tell Crystal Hall of the NRI Employment Agency that

Plaintiff Jacqueline Robinson-Reeder has been fired from ACE for being rude and unprofessional

or make any other negative remarks about Ms. Robinson-Reeder to NRI.").  The Court cannot

credit Robinson-Reeder's bald allegations when she herself admits that they are mere

hypotheses.[4]

---

[4] Nor can the Court credit the equally conclusory allegation that ACE has improperly shared Robinson-Reeder's EEOC charge of discrimination with prospective employers or employment agencies.  Because this allegation underlies Robinson-Reeder's "Restraining Order Request," the Court will deny that motion.  See Pl.'s Request for a Restraining Order [Docket Entry 104], at 3.  There, Robinson-Reeder also alleges that Collins improperly shared Robinson-Reeder's EEOC discrimination charge with other ACE employees in violation of Title VII and several other statutes.  Even assuming these allegations are properly before the Court -- she did not raise them in her complaint -- they nevertheless do not state a Title VII claim.  The uncontroverted evidence is that the ACE employees that Robinson-Reeder asserts knew about her EEOC charge gained this knowledge properly through their official duties.  See Def.'s Am. Responses at 4.  Nor do the other statutes Robinson-Reeder references supply a cause of action for her allegations: the Privacy Act concerns recordkeeping by federal agencies, see 5 U.S.C. §

To be sure, in one of her motions for summary judgment Robinson-Reeder recounts several conversations she allegedly had with individuals at potential employers and placement agencies regarding references ACE provided.  She asserts that these individuals told her that ACE provided them negative references.  See, e.g., Pl.'s Mot. for Summ. J. [Docket Entry 68], Exhibit B (Robinson-Reeder Aff.) (Crystal Hall of NRI Employment Agency "told me that ACE said I was 'fired for being rude and unprofessional'"); id., Exhibit C (Robinson-Reeder Aff.) (Tricia Placido of the Ford Agency "informed me she could no longer refer me for jobs because she received a[n] unfavorable reference from the American Council on Education"); id., Exhibit D (Robinson-Reeder Aff.) (Ivey Farber, an executive assistant at Robinson-Reeder's place of temporary employment "informed [me] they gave me an unfavorable reference and later instructed me to remove them from my resume since I only worked their [sic] for 6 months").

The Court, however, cannot credit these recollections in determining whether there is a genuine issue of material fact.  Even setting aside that the substance of these conversations is controverted by Robinson-Reeder's later deposition testimony -- where she admits that she does not know of any particular instance in which ACE provided a negative reference on her behalf -- this evidence is sheer hearsay.  In retelling her conversations with potential employers and employment agencies, Robinson-Reeder is offering a statement made by an out-of-court declarant to prove the truth of the matter asserted.  See Fed. R. Evid. 801-02.  Such statements "are precluded from consideration by the Court" on summary judgment.  Riggsbee v. Diversity Servs., Inc., 637 F. Supp. 2d 39, 46 (D.D.C. 2009); see also Fed. R. Civ. P. 56(e)(1); Greer v.

---

552a(b); the Fair Labor Standards Act concerns minimum wage, maximum hours, and child labor, see 29 U.S.C. §§ 201 et seq.; and the Age Discrimination in Employment Act concerns the issue of age in employment, see 29 U.S.C. §§ 621 et seq.

Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007); Gleklen v. Democratic Cong. Campaign Comm., 199 F.3d 1365, 1369 (D.C. Cir. 2000).  Nor are there any hearsay exceptions to rescue Robinson-Reeder's recountings.  And she has not produced any affidavits or depositions from these witnesses corroborating her recollection.  Robinson-Reeder, therefore, has marshaled no admissible evidence to support her assertion that ACE provided negative or defamatory job references.

Although Robinson-Reeder is understandably upset that she has not found permanent employment since she resigned from ACE, conclusory allegations, speculation, and inadmissible hearsay cannot create a genuine issue of material fact.  ACE is therefore entitled to summary judgment on Robinson-Reeder's retaliation claim.

## II.   Robinson-Reeder's COBRA Claim

The parties here also each moved for summary judgment on Robinson-Reeder's claim that "Plaintiff deserves penalties to be assessed under COBRA law" because ACE allegedly mailed a required COBRA notice to an incorrect address, thereby depriving plaintiff of medical benefits. Compl. at p. 17.  COBRA requires that plan sponsors of group health plans provide continuing coverage to qualified beneficiaries after certain qualifying events.[5]  See 29 U.S.C. §§ 1161 et seq. The statute requires that an employer notify its health plan administrator within thirty days of the occurrence of a qualifying event.  See id. at § 1166(a)(2).  And it further requires that the administrator notify the qualified beneficiary and her dependents about the possibility of continuing coverage within fourteen days of itself being notified.  See id. at § 1166(c).  Under 29

---

[5] There is no dispute that Robinson-Reeder is a qualified beneficiary or that her resignation from ACE is a qualifying event.

U.S.C. § 1132(c)(1), the court may penalize a plan sponsor or plan administrator for failure to provide the proper notice of continuing coverage to a beneficiary.  See 29 U.S.C. § 1132(c)(1) (penalties of up to $100 per day from the date of the failure to give notice).

Under COBRA law, a plan sponsor or administrator need not ensure that a beneficiary and her dependents actually receive the required notice.  Rather, "[a]n employer or plan administrator who sends proper notice by first class mail to the covered employee's last known address is deemed to be in good faith compliance."  See Truesdale v. Pac. Holding Co./Hay Adams Div., 778 F. Supp. 77, 81 (D.D.C. 1991); see also Degruise v. Sprint Corp., 279 F.3d 333, 336 (5th Cir. 2002) (good faith compliance does not mean "that employers are required to ensure that plan participants actually receive notice.  Rather it merely obligates employers to use means 'reasonably calculated' to reach plan participants."); Liles v. N.Y. City Dep't of Educ., 516 F. Supp. 2d 297, 317 (S.D.N.Y. 2007) ("It is not Defendants' obligation to track down Plaintiff in order to assure that he receives the COBRA forms that were sent to him."); cf. Legille v. Dann, 544 F.2d 1, 4-5 (D.C. Cir. 1976) ("Proof that mail matter is properly addressed, stamped and deposited in an appropriate receptacle has long been accepted as evidence of delivery to the addressee.").  Therefore, whether Robinson-Reeder actually received the COBRA notice is not the real issue here.

The parties' essential disagreement instead is whether ACE provided the correct address to its plan administrator, which mailed the COBRA notice to Robinson-Reeder.  Robinson-Reeder contends that ACE provided its plan administrator the incorrect address.  See Pl.'s Mot. for Summ. J. on COBRA Claim [Docket Entry 56], at 3, 5.  According to her, the address ACE provided -- and therefore the address to which the notice was mailed -- omitted Robinson-

Reeder's apartment number, although it is uncontested that the address was correct in all other respects.  See id.  For its part, ACE responds that "ACE and its plan administrator satisfied COBRA's mailing requirements by sending the continuing coverage notice to the exact address Ms. Robinson-Reeder herself provided."  Def.'s Opp'n to Pl.'s Mot. for Failure to Provide COBRA Notice Penalties ("Def.'s COBRA Opp'n") [Docket Entry 48], at 4.  Robinson-Reeder, ACE states, provided this address in her original health insurance enrollment form.  See id.

Summary judgment is appropriate for ACE on the COBRA claim because there is no genuine issue of material fact that ACE complied with its COBRA notice obligations in good faith.  The COBRA notice forms that ACE's plan administrator mailed to Robinson-Reeder and her husband bear the same address that appears on Robinson-Reeder's health insurance enrollment form.  Compare Def.'s COBRA Opp'n, Exhibit A (enrollment form), with id., Exhibit B (COBRA notice for Jacqueline Robinson-Reeder), and Def.'s Reply in Supp. of its Cross-Mot. for Summ. J. ("Def.'s COBRA Reply") [Docket Entry 52], Exhibit 1 (COBRA notice for Robert Reeder).  The enrollment form does omit Robinson-Reeder's apartment number, but ACE states -- and Robinson-Reeder does not contest -- that it was she who filled out the form in its entirety. See Def.'s COBRA Reply at 1; id., Exhibit 2 (Decl. of Altowese McLendon ("McLendon Decl.")), at ¶ 3 ("Ms. Robinson-Reeder completed all sections of the Enrollment Application from the section entitled 'Name of Association' through 'Section 5.'"); id. at ¶ 7 ("I made no changes to the substantive information provided by Ms. Robinson-Reeder on the Enrollment Application.").  Therefore, ACE provided to its plan administrator the address Robinson-Reeder herself provided.  And the administrator mailed the COBRA notice to that address.  This is sufficient to satisfy ACE's obligation under COBRA.  See Truesdale, 778 F. Supp. at 81.

Although the address may have been incomplete, Robinson-Reeder is not entitled to "benefit from her own error." Id.[6]

Not one to give up, Robinson-Reeder argues that ACE elided her apartment number from her address after she completed the form. See Docket Entry 56 at 3 ("Notice the big gap in space after Drive 'something is missing' #421 was 'white out' by the defendant . . . ." (errors in original)). Accordingly, she states that even though she properly filled out the form, ACE subsequently took action to preclude her from receiving the COBRA notice. This argument is unpersuasive. The Court required ACE to submit, and has now reviewed in camera, Robinson-Reeder's original health insurance enrollment application.[7] The form bears no markings or other indications that an apartment number or anything else was covered up or otherwise removed from the employee information section.[8] Moreover, Robinson-Reeder's own filings indicate that she has provided her address as it appears on her health insurance enrollment form. In two Charges of Discrimination filed with the D.C. Office of Human Rights, she listed her building address without any additional detail. See Pl.'s Response to Def.'s Summ. J. Mot. [Docket Entry 91], Exhibit 2.

---

[6] To be sure, Robinson-Reeder does assert that she did not sign the enrollment form. See Docket Entry 56 at 3. ACE admits as much, suggesting that Robinson-Reeder signed the form in the wrong place, subsequently asking ACE to correct the error. See McLendon Decl. ¶ 4-6. This disagreement, however, is of no moment. Even if Robinson-Reeder did not sign the form, it is undisputed that she filled out the information on it.

[7] Robinson-Reeder viewed the original document on November 9, 2009. See Notice of Plaintiff's Review of the Original Document [Docket Entry 97].

[8] Indeed, the only evidence of white-out on the form is in the "authorized signature" and date block. ACE admits that it had to white-out this section because Robinson-Reeder incorrectly signed the form there. See McLendon Decl. ¶ 4-6.

Robinson-Reeder has offered nothing more than unsupported conclusions to support her allegations that ACE did not comply with COBRA in good faith. Such "evidence," however, is insufficient to create a genuine issue of material fact on summary judgment. Therefore, summary judgment is appropriate for ACE on Robinson-Reeder's COBRA notice claim.[9]

## **CONCLUSION**

For the foregoing reasons, summary judgment is appropriate for ACE on both Robinson-Reeder's retaliation claim and her COBRA notice claim. A separate order has been issued on this date. All other pending motions will be denied as moot.


_____
/s/
JOHN D. BATES
United States District Judge

Dated: <u>December 4, 2009</u>

---

[9] Robinson-Reeder also alleges that ACE did not comply with its COBRA obligations because her son did not receive the required notice. The plan administrator, however, satisfied its duty under COBRA to mail a notice of continuing coverage to Robinson-Reeder's dependents by providing a notice to her husband. See 29 U.S.C. § 1166(c) ("[A]ny such notification to an individual who is a qualified beneficiary as the spouse of the covered employee shall be treated as notification to all other qualified beneficiaries residing with such spouse at the time such notification is made.").