UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACQUELINE T. ROBINSON-REEDER,

Plaintiff,

v.

AMERICAN COUNCIL ON
EDUCATION,

Defendant.

Civil Action No. 08-1577 (JDB)

## MEMORANDUM OPINION and ORDER

Jacqueline Robinson-Reeder seeks reconsideration of the Court's December 4, 2009 Memorandum Opinion and Order granting summary judgment to the American Council on Education ("ACE"). See Pl.'s Mot. for Reconsideration ("Pl.'s Mot.") [Docket Entry 112];[1] see also Robinson-Reeder v. Am. Council on Educ., --- F. Supp. 2d ---, 2009 WL 4456819 (D.D.C. 2009). Robinson-Reeder insists that justice requires the Court to revisit its decision because the Memorandum Opinion contains several "massive errors." Robinson-Reeder also asks the Court not to consider her September 9, 2009 deposition testimony in this action. See Pl.'s Mot. to Strike [Docket Entry 118]. The Court will resolve that motion here as well.

---

[1] Robinson-Reeder has filed several motions for reconsideration and replies in support, all of which the Court has considered here. See Pl.'s Am. Mot. for Reconsideration ("Pl.'s Am. Mot.") [Docket Entry 114]; Pl.'s Reply in Supp. of Mot. for Reconsideration [Docket Entry 116]; Pl.'s Reply in Supp. of Am. Mot. for Reconsideration ("Pl.'s Am. Reply") [Docket Entry 117]. In addition, she has filed two motions for judgment as a matter of law under Federal Rule of Civil Procedure 50. See Pl.'s Mot. for J. as a Matter of Law [Docket Entry 119]; Pl.'s Am. Mot. for J. as a Matter of Law ("Pl.'s Am. Mot. for J.") [Docket Entry 123]. Because a motion under Rule 50 is unavailable at this stage in the litigation, and because her motions duplicate the grounds for relief asserted in her motions for reconsideration, the Court will deny the motions. Nevertheless, the Court will consider the arguments in the motions for judgment as a matter of law when resolving Robinson-Reeder's motions for reconsideration.

## ANALYSIS

### I.     Motion for Reconsideration

Although there is no Federal Rule of Civil Procedure that expressly addresses motions for reconsideration, see Lance v. United Mine Workers of Am. 1974 Pension Trust, 400 F. Supp. 2d 29, 31 (D.D.C. 2005), Robinson-Reeder's allegation that the Court's December 4, 2009 Memorandum Opinion is replete with "massive errors" is properly characterized as a motion under Rule 60(b)(6).  See Fed. R. Civ. P. 60(b)(6) (a court may "relieve a party . . . from a final judgment" for "any . . . reason that justifies relief").  "[A] district court enjoys significant discretion in deciding whether to grant or deny a Rule 60(b) motion."  Computer Prof'ls for Soc. Responsibility v. United States Secret Serv., 72 F.3d 897, 903 (D.C. Cir. 1996).  Nevertheless, Rule 60(b)(6) "relief should be only sparingly used" in "extraordinary circumstances."  Id.

Robinson-Reeder cites several purported "massive errors" that the Court made in its Memorandum Opinion, which the Court will take in turn.  It is noteworthy, however, that despite her numerous filings, Robinson-Reeder has not presented any new grounds either to defeat ACE's motion for summary judgment or in support of her own motions for summary judgment.  Accordingly, for the reasons stated below, the Court denies Robinson-Reeder's motion for reconsideration.[2]

---

[2] Robinson-Reeder also styles her motions for reconsideration pursuant to Rule 59.  The Federal Rules give a party twenty-eight days to file a motion to alter or amend a judgment under Rule 59(e).  The Court granted summary judgment to ACE on December 4, 2009.  See December 4, 2009 Order [Docket Entry 110].  Robinson-Reeder filed her earliest motion for reconsideration on January 6, 2010, more than twenty-eight days after the Court entered its order.  See Pl.'s Mot. at 1.  Although she asserts that that motion is timely under Rule 59(e) because she does not have to count the intervening legal holidays, the Federal Rules require a party to include legal holidays when computing time.  See Fed. R. Civ. P. 6(a)(1)(B).  Therefore, a Rule 59(e) motion is untimely.  Nevertheless, "[a]n untimely motion under Rule 59(e) may be considered as a motion

### A. Brady v. Office of the Sergeant at Arms

Robinson-Reeder first contends that the Court misapplied the D.C. Circuit's decision in Brady v. Office of the Sergeant at Arms, 520 F.3d 490 (D.C. Cir. 2008). She opines that Brady "stops the McDonnell Douglas burden shift under the assumption the employer has already offered their non-discriminatory reasons before Summary Judgment and thus the prima facie case is irrelevant." Pl.'s Mem. at 18. Therefore, she insists that it was incorrect for the Court to stop its analysis of Robinson-Reeder's retaliation claim at the prima facie case. See id. at 18-19. Although Robinson-Reeder's description of Brady is correct, her application of it to this case is not. Brady relieves the district court of the obligation to analyze a plaintiff's prima facie case of discrimination or retaliation where the employer asserts a legitimate, non-discriminatory reason for the challenged action. See Brady, 520 F.3d at 493. Here, however, ACE never offered a legitimate, non-discriminatory reason for its actions. Rather, it denied that any of the purported adverse actions actually occurred. Accordingly, the Court's analysis necessarily began with the question whether Robinson-Reeder presented a prima facie case of discrimination. And it properly ended there as well, for the Court found that there was no admissible evidence in the record to support Robinson-Reeder's allegation that she suffered an adverse action.

### B. No Evidence in the Record to Support Robinson-Reeder's Retaliation Claim

Robinson-Reeder next argues that the Court erred when it concluded that she failed to point to any evidence in the record corroborating her allegation that she suffered an adverse action. She advances two arguments in support of reconsideration

---

under Rule 60(b) if it states grounds for relief under the latter rule." Computer Prof'ls, 72 F.3d at 903. Under either approach, the Court reaches the same disposition of Robinson-Reeder's motions.

First, she contends that there is admissible evidence supporting her allegation that she had been denied job references on three occasions.[3] See, e.g., Pl.'s Mot. at 2; Pl.'s Am. Reply at 2. In support of this assertion, Robinson-Reeder cites the written deposition testimony of Coleen Collins, the Assistant Vice President of Human Resources at ACE. In that deposition, Collins stated the following:

> While I provided a favorable reference over the phone for Ms. Robinson-Reeder, I am aware of the ACE policy that states that no reference, other than confirmation of an employee's dates of employment and title(s) held, are given unless the employee signs a written authorization. For that reason, we are unable to provide anything beyond a neutral, written reference. In addition, when I was asked to put a favorable reference in writing, litigation in this and other related actions was already pending.

Def.'s Reply in Supp. of Mot. for Summ. J. [Docket Entry 96], Exhibit A (Defendant's Amended Responses to Plaintiff's Revised Request for Written Examination of Coleen Collins), 9. According to Robinson-Reeder, Collins's answer proves her prima facie case: "[d]efendants admit denying the neutral written reference, because they litigation and [sic] already started." Pl.'s Mot. at 2. But Collins does not state that she denied Robinson-Reeder a neutral, written reference. In fact, Collins suggests that she <u>will</u> provide the standard, neutral reference to employers. At most, Collins asserts only that she could not put a favorable reference in writing, due to a standard policy of ACE. Accordingly, the passage provides no evidence that ACE denied Robinson-Reeder a standard, neutral job reference in retaliation for her Equal Employment Opportunity complaints.

---

[3] In its Memorandum Opinion, the Court focused on Robinson-Reeder's allegation that ACE had denied potential employers job references regarding Robinson-Reeder. She now contends that she herself has been unable to obtain job references from ACE as well. The Court considers both allegations here.

Furthermore, several pieces of evidence that Robinson-Reeder marshals in support of her allegation that she was denied a job reference also support ACE's position's that it never denied her a reference.  For example, Robinson-Reeder points to an email from Coleen Collins as evidence that ACE denied her a standard job reference.  See Pl.'s Mot., Exhibit 2 (Jan. 9, 2007 email from Collins to Robinson-Reeder).  But in that email Collins stated that "[w]e will provide prospective employers with your dates of employment and your job title," id. -- in other words, the information on a standard job reference.  Moreover, Robinson-Reeder alleges that she faxed a letter to ACE's counsel on June 26, 2007, "stating she needed more than a job reference."  Pl.'s Am. Reply at 2 (emphasis omitted).  Seeking "more than a job reference," however, suggests that Robinson-Reeder had already obtained a job reference from ACE.  These pieces of evidence provide no support for Robinson-Reeder's allegations, and in fact support ACE's position that Robinson-Reeder suffered no adverse action.[4]

Second, Robinson-Reeder challenges the Court's conclusion that she offered no evidence in support of her allegation that ACE gave negative and defamatory job references to potential employers.  See Pl.'s Am. Reply at 5; Robinson-Reeder, 2009 WL 4456819 at *4-5.  In her litigation papers, Robinson-Reeder recounted several conversations she allegedly had with individuals at potential employers and placement agencies regarding references ACE provided. She asserted that these individuals told her that ACE provided them with negative references, and restated the conversations in her own sworn affidavits.  See Pl.'s Am. Reply at 5; see also

---

[4] Robinson-Reeder also alleges that in a motion ACE filed on June 1, 2009, ACE "firmly state[d] that Robinson-Reeder is not qualified to receive a job reference."  Pl.'s Am. Reply at 2. The Court has read ACE's June 1, 2009 filing, and there is no statement to that effect in the motion.  See Def.'s Resp. to Pl.'s Mot. to End Mediation [Docket Entry 39], at 1.  ACE's motion simply consents to "Robinson-Reeder's request to end the Court-ordered mediation."  Id.

Pl.'s Mot. for Summ. J. [Docket Entry 68], Exhibits B, C, D.  As the Court concluded in its Memorandum Opinion, however, this evidence is hearsay.  "In retelling her conversations with potential employers and employment agencies, Robinson-Reeder is offering a statement made by an out-of-court declarant to prove the truth of the matter asserted."  Robinson-Reeder, 2009 WL 4456819 at *5.  Such statements "are precluded from consideration by the Court" on summary judgment.  Riggsbee v. Diversity Servs., Inc., 637 F.Supp.2d 39, 46 (D.D.C. 2009); see also Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (where plaintiff's statement is "'sheer hearsay,' it 'counts for nothing' on summary judgment" (quoting Gleklen v. Democratic Cong. Campaign Comm., 199 F.3d 1365, 1369 (D.C. Cir. 2000))).

Although Robinson-Reeder opines that these individuals would be able to corroborate her affidavits at trial, there is simply no admissible evidence in the record from which a jury could reasonably conclude that these conversations took place.  Robinson-Reeder had every opportunity to obtain sworn statements from these potential witnesses.  She did not do so.  And her own sworn affidavits cannot sustain her assertion that ACE provided negative or defamatory job references.  See Dist. Intown Props. Ltd P'ships v. Dist. of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record.").[5]

---

[5] In her amended motion for judgment as a matter of law, Robinson-Reeder also suggests that summary judgment is inappropriate because she was denied discovery.  See Pl.'s Am. Mot. for J. at 1.  In support of this allegation, she states that in its written deposition responses, ACE improperly objected to questions on the basis of relevance.  See id.  The Court cured this defect, however, by ordering ACE either to respond to these questions or to support any relevancy objections by detailed explanations.  See October 26, 2009 Memorandum Opinion [Docket Entry 93], at 6-7.  Furthermore, Robinson-Reeder seems to object to the fact that although the Court permitted some additional discovery after the end of discovery on August 28, 2009, it did not permit all of the additional discovery she sought.  See Pl.'s Am. Mot. for J. at 3.  The Court

Robinson-Reeder also contends that ACE has not provided any evidence that the alleged "favorable reference" Collins gave to a potential employer about Robinson-Reeder was actually favorable. Hence, she argues that Collins must have provided a negative reference, therefore proving that Robinson-Reeder suffered an adverse action. See Pl.'s Mot. at 2. Not so. There is no admissible evidence to corroborate Robinson-Reeder's belief that Collins provided a negative reference. And the Court may consider Collins's statement as evidence on a motion for summary judgment. At the least, then, the alleged "favorable reference" is neutral evidence that weighs in favor of neither party. Neutral evidence, however, cannot support Robinson-Reeder's allegation that ACE gave potential employers negative references. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (summary judgment appropriate where non-moving party has not proffered admissible evidence in support of claims).[6]

---

allowed this limited, out-of-time discovery in response to the parties' requests at the September 9, 2009 status conference, and Robinson-Reeder cannot covert this grant into a general right to ignore the Court's discovery deadline. Finally, Robinson-Reeder's request for additional discovery is inconsistent with the multiple motions for summary judgment she has filed in this action.

[6] Robinson-Reeder insists that the Court did not discuss, let alone resolve, her claim for retaliation based on constructive discharge. See Pl.'s Mot. at 20; see also Pl.'s Mot. for Summ J. on Constructive Discharge Claim [Docket Entry 105]. But Robinson-Reeder's complaint never asserted a claim for retaliation based on constructive discharge. And her Equal Employment Opportunity Commission complaints for retaliation fail to allege constructive discharge as well. Moreover, the facts simply do not support a retaliation claim based on constructive discharge. Robinson-Reeder alleges that she first was subject to retaliation for filing a charge with the Equal Employment Opportunity Commission in December 2006. See Pl.'s Response to Def.'s Mot. for Summ. J. [Docket Entry 91], Exhibit 2 (Employment Opportunity Commission Charge of Discrimination). Yet, she alleges that she was constructively discharged from her employment at ACE in November 2006 -- before she engaged in the protected conduct of filing complaints with the Equal Employment Opportunity Commission. See Pl.'s Mot. at 20-21.

C.     **Robinson-Reeder's COBRA Claim**

Robinson-Reeder also challenges the Court's conclusion that she is not entitled to penalties under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") because ACE allegedly mailed a required COBRA form to an incorrect address.  See Pl.'s Am. Mot. at 12. COBRA requires that plan sponsors of group health plans -- here ACE -- provide continuing coverage to qualified beneficiaries after certain qualifying events.  See 29 U.S.C. §§ 1161 et seq. To do so, an employer must notify its health plan administrator within thirty days of the occurrence of a qualifying event, such as an employee's resignation.  See id. at § 1166(a)(2). COBRA then requires that the administrator notify the qualified beneficiary and her dependents about the possibility of continuing coverage within fourteen days of itself being notified.  See id. at § 1166(c).

Robinson-Reeder alleged that ACE did not provide her correct address to its plan administrator, thereby denying her continuing benefits.  The Court found, however, that "[t]he COBRA notice forms that ACE's plan administrator mailed to Robinson-Reeder and her husband bear the same address that appears on Robinson-Reeder's health insurance enrollment form," which she filled out herself.  Robinson-Reeder, 2009 WL 4456819 at *6.  Nevertheless, Robinson-Reeder alleged that "ACE elided her apartment number from her address after she completed the form."  Id. at *7.  The Court was unpersuaded, as there was no admissible evidence to support this allegation.  See id.  Robinson-Reeder now offers several arguments in support of reconsideration.

First, she argues that the Court improperly relied on a copy of her original health insurance form to reach its conclusion that ACE mailed the COBRA notice to the address

Robinson-Reeder provided. See Pl.'s Am. Mot. at 12. The Court, however, viewed the original health insurance form in camera -- that is "in chambers." See Black's Law Dictionary (8th ed. 2004); see also November 23, 2009 Minute Order; Pl.'s Notice [Docket Entry 97] (Robinson-Reeder states that she has viewed the original health insurance form). And it concluded on the basis of this in chambers review of the original document that Robinson-Reeder's address had not been altered in any way. See Robinson-Reeder, 2009 WL 4456819 at *7.[7]

Second, Robinson-Reeder asserts that ACE did not comply with its COBRA notice obligations because her son, a qualified beneficiary of her health plan, did not receive the required notice. See Pl.'s Am. Reply at 7-8. The Court rejected this claim because the plan administrator provided notice to her husband, which was sufficient under the COBRA statute to provide notice to her son as well. See Robinson-Reeder, 2009 WL 4456819 at *7 n.9. She now contends that Robert Reeder was not a qualified beneficiary of her health plan, and thus notice to him could not be sufficient to provide notice to her son. See Pl.'s Am. Reply at 7-8. But this argument contradicts her earlier statement that ACE "failed to provide continuation of coverage to the ex-employee [sic] husband and son." Pl.'s Mot. for Summ. J. on the COBRA Claim [Docket Entry 51], at 6 (emphasis added). That is, in her motion for summary judgment she

---

[7] Robinson-Reeder also objects to the Court's reliance on an Equal Employment Opportunity Commission intake questionnaire to conclude that "she has provided her address as it appears on her health insurance form" -- that is, without her apartment number. Robinson-Reeder, 2009 WL 4456819 at *7. She opines that the Court should not have done so because an Equal Employment Opportunity Commission representative completed the intake questionnaire, and therefore any error in the questionnaire is not Robinson-Reeder's fault. Although this may be so, the Court did not resolve her COBRA notice claim on the basis of the intake questionnaire. The Court's conclusion that there is no admissible evidence indicating that ACE eliminated Robinson-Reeder's apartment number from her health insurance form stands even without the evidence from the intake questionnaire. See id.

indicated that her husband was a qualified beneficiary of her health insurance. On the basis of that record, the Court concluded ACE had fully complied with its COBRA notice obligations. Robinson-Reeder has provided no explanation for the switch in her position, nor has she explained why she could not have previously raised the argument she now makes in her motions for reconsideration. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship, 507 U.S. 380, 393 (1993) (under Rule 60(b)(6) "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay" of not timely raising the fact or argument); cf. New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995) ("A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled."). Accordingly, the Court will not revisit its resolution of Robinson-Reeder's COBRA notice claim.

## II.     Motion to Strike

Robinson-Reeder also asks the Court not to consider her September 9, 2009 deposition testimony in this action. See Pl.'s Mot. to Strike at 2. She asserts that the Court was "legally wrong using the Deposition taken on September 9, 2009, against the plaintiff on a State Claim of Defamation." Pl.'s Am. Reply at 4. The September 9, 2009 deposition, however, was taken in this action. See Def.'s Mem. in Supp. of Mot. for Summ. J. [Docket Entry 89], Exhibit C (September 9, 2009 Deposition of Jacqueline Robinson-Reeder), 1. Robinson-Reeder also insists that her deposition testimony regarding whether Christine Morfit gave potential employers negative references is irrelevant to this action. See Pl.'s Am. Reply at 6. She insists that she did not "personally accuse" only Morfit of giving negative references, but rather accused all of ACE. See id. But Robinson-Reeder specifically alleges that ACE employees gave negative references about her. Compl. at p. 3. Accordingly, her deposition testimony regarding whether Christine

Morfit -- her supervisor at ACE -- did so is quite relevant.  For these reasons, Robinson-Reeder's motion to strike is without merit.

## CONCLUSION

Upon consideration of Robinson-Reeder's various motions, the parties' several memoranda, and the entire record herein, and for the reasons stated above, it is hereby

**ORDERED** that [112, 114] Robinson-Reeder's motions for reconsideration are **DENIED**; it is further

**ORDERED** that [118] Robinson-Reeder's motion to strike her September 9, 2009 deposition from the Court's consideration is **DENIED**; and it is further

**ORDERED** that [119, 123] Robinson-Reeder's motions for judgment as a matter of law are **DENIED**.

**SO ORDERED**.

/s/<br>JOHN D. BATES<br>United States District Judge

Dated: <u>February 22, 2010</u>